In our next case, it's Bermeo v. Andis, Ms. Hordachuk. Did I mispronounce that, ma'am? Pretty close. Good to have you with us. Thank you. May it please the court, my name is Melissa Hordachuk on behalf of the plaintiff appellant, Dyanie Bermeo. This case is not about a suspect's confession. It's about a victim's recantation that was extracted through deception and pressure. And the district court relied in error on its own interpretation of an audio recording that the defendants submitted outside of the pleadings. And in doing so, it effectively performed a summary judgment fact-finding at the pleading stage. And in the court's order, in fact, on JA 135 and footnote 7, Judge Urbanski makes a comment about his decision would be the same under Rule 12, B6 or Rule 56 because he believed that no reasonable jury could find that Ms. Bermeo had been coerced. I recognize that opposing counsel had submitted a series of alternative arguments. These were all briefed below and they are addressed in ECF 68 in the opposition brief that we filed on January 11th. But all of those, we are maintaining that all of those arguments are still subject to the threshold issue of whether or not this was a voluntary statement or a coerced involuntary statement. That all of those, all of the existing claims are still arising from that, which is what the district court found and we have not disputed that. I did include two cases. I filed a 28-day letter just on Friday night. I apologize for the last minute submission. The purpose of these cases were not so much from an authoritative perspective, but just to show that there is a pattern of law enforcement officers using coercion to pressure victims of sexual assault who report to recant and then charging them with false reporting. Your case doesn't have to go there. I mean, I don't think, it seems to me, it's an evidentiary question in terms of the use of the video. Typically in the pleading stage, you don't look at other evidence, but we do have cases in which if it blatantly contradicts some facts in there. So if I'm looking at this case, I'm thinking the issue here is, it does boil down to that problem about determination, is there a blatant contradiction? Then it goes to, what is blatant contradiction? And it seems to me, your argument, at least the way I was reading your briefs and the way it seemed to point, is that the judge didn't look at the, he didn't really analyze whether the facts were blatantly contradicting. He looked at the whole case and said, no, it doesn't look like this is it. No, that didn't happen, so to speak, which is really more getting toward a factual question down the line. So it seems like the issue here is pretty narrow to me, but I might be reading it too narrow. So tell me. Well, we are in agreement. This is why I focused my reply brief also on this narrow issue, because it's really just a matter of, the court is required to accept all of the factual allegations as true under 12b-6 and accord all reasonable inferences to the plaintiff. They went outside the complaint, though, and put this tape in, right? That's correct, Your Honor. It was proper to consider that. That's what the question is, and it carried today. So the idea of considering it, under Dorietty v. Slatton, this court recently had considered a video recording, also in a 1983 case, and similar to here, we do not object, because we're not objecting to its authenticity. So it can only be considered under Dorietty to the extent, as Judge Wynn had just said, to the extent it blatantly contradicts the plaintiff's allegations. You said there was no blatant contradiction? That's correct. I'm sorry. No, you go ahead. I want to make sure I understand. I understand that point, that you don't think this blatantly contradicts specific factual allegations. It may blatantly contradict one or two, but I think, by and large, your argument is, Judge Wynn, I think, summarized rightly, is that the district court seems to have said, look, when you look at this audio, you can't really, no reasonable person would claim that is a coercive confession. And your position, I think, is that's not a proper use under Dorietty or the Scott v. Harris place that all came from to do something like that, because that's looking at the whole situation. In fact, one of the factors in the coercive confession issue would be the individual characteristics of the plaintiff. And you might, I think you said, you would introduce evidence about that, that aren't in the pleadings yet. So I hear you. I don't take that other than at least I understand it. But you did say that you agreed to the district court that it could consider the audio recording. So it seems like it's not an error for the district court to have considered it. Indeed, you can't really say, yes, okay with me and now criticize it. But then you got to do it in accordance with the law. And your argument is that he went too far with it, basically. Is that fair? Yes, Your Honor. It's very similar as to Dorietty where this court clarified that considering it is one thing, but then the court went on to interpret it, which is what we maintain happened here. It's like a trial to the court. It was like a trial to the court with limited evidence. So what if we agree with you? The district court went further with that audio recording that he should have. You probably were sitting here for the prior argument. There's this issue of can we affirm on other grounds? Or was it harmful or harmless for the district court to have done that? And the defendants point out that there was at least qualified immunity here by the officers involved. First of all, what's your view if we agree with you on the coerced confession and the consideration of the audio? Can we consider that? Should we consider it? If we do, what's your position on it? Well, at this stage of the proceeding, when there are material factual disputes, there should not be any consideration of qualified immunity. But going further than that, the sexual assault response policy that we attach to the pleading in and of itself creates an expectation of what the law enforcement officers should have done. And I recently learned, and I would ask the court to take judicial notice of this, that the Virginia Code 9.1-1301 requires all law enforcement agencies in Virginia to have a sexual assault response policy. So this policy was required. And obviously the inference there is that the Commonwealth of Virginia has some sort of expectation for law enforcement officers to be trained and to learn how to respond to sexual assault reports. But you know, if we stay where we are, we can make this case expanded to different areas. Go back to Dory, which is really the basis for the miscibility of videos here. And it says, first of all, it has to be integral. Well, that's not contested here. It's integral. And then you agree it's authentic. That's where you get into that but part of Dory. Dory said, but it must show facts that are blatantly contradictory. That's the problem that I see with this case. And because that was not done. And I don't see how it can be harmless because he didn't do it. And that's the whole basis of using a video recording. If you go down and list every one of those facts in that complaint and compare it with what happened on that video, there's almost nothing that contradicts. I mean, there's maybe a statement toward the end. I found maybe on paragraph 77 where he said, I assured her that they would not tell anyone else about the incident. That's in the complaint. But then the recording says, I have to let the captain know. I have to let the security people know. That's about it. I don't see any other facts in here that are contradictory. Unless you want to look at a legal conclusion and say a legal conclusion is contradicted. In other words, no reasonable jury, as Judge Quattlebaum put it, could come up with it. Then that's a whole different ballgame. But I think we expand Dory when we start doing that because Dory tells you, you've got three things there. Is it integral? That's not on the table. Is it authentic? That's not on the table because you've agreed it's authentic. But it doesn't show blatantly contradictory facts here. That's the problem that I see with this case. It seems pretty straightforward to me. I am in agreement with you, Judge Wynn. In the district court's defense, I think that Judge Urbanski just viewed these facts in the frame of suspects in violent crime investigations and just sort of put it through that lens, thinking that these were legal conclusions that could be made. Obviously, Dorietti was issued after the first opinion, but prior to the 59E order. But I am in agreement. He may be right. He may be wrong. But even if he's right, that this would ultimately doom the complaint, and I know you wouldn't agree with that, and I'm not asking you to agree, but even if his assessment is right, I think under our case law, if it's an assessment of the legal conclusion of the facts, that's different than contradicting the factual allegations themselves. But let's be fair to Judge Urbanski. He didn't have Daugherty before. That case wasn't decided. That's right. I mean, he's a very good judge, and I want to put him out of it, but I think had he had it, he'd had a different analysis, more in line with what I've articulated here for the day in court. Well, Dorietti did come out between the memorandum opinion and our motion under Rule 59E, and perhaps he just didn't look hard at it. I don't know what occurred, but I share your agreement that he's a fantastic judge. So I just think if one were to look under the court precedent, the answer is clear, that you can't be ... It doesn't sound like ... Are there any other questions? I don't mind ceding my time. Thank you very much. Thank you. We appreciate it. You save some time if you need some rebuttal. Mr. Schnetzler? Schnetzler, yes, Your Honor. Good to have you with us. Thank you for having me. May it please the court, Nathan Schnetzler on behalf of the appellees, Sheriff Blake Andes, Jamie Blevins, Scott Adkins, and Brad Group of the Washington County Virginia Sheriff's Office. Your Honor, I'd like to ... Your Honors, I'd like to jump to really where the discussion left off with my friend on the other side with respect to the question about blatant contradiction. And for me, that raises sort of two issues that this panel needs to consider. And one, I think the main question here is whether or not Judge Urbanski's determination that there was a blatant contradiction rested on the issue of a legal conclusion, or whether there was a blatant contradiction with the factual allegations in the complaint. Well, Daughter makes it very clear. It says, but only to the extent the video clearly depicts a set of facts contrary to the alleged in the complaint, or blatantly contradicts. It doesn't say that it yields a blatantly contradictory legal conclusion to it. So it seems like to me we're talking about the facts of it, because when we start going other places there with it, then we really are getting into a jury determination, aren't we? Well, Judge Wayne, I'm not arguing that it can be based on a legal conclusion or a factual contradiction. What I'm suggesting is this panel needs to consider what did Judge Urbanski do? Did he say that there was a blatant contradiction based on the legal conclusions in the allegation, based on the factual allegations in the complaint? So you are saying there are blatant contradictory facts here. What are they? I agree with Judge Urbanski in his decision on the motion to reconsider, and this is at J148, where he writes, excuse me, he's quoting from the complaint. He says in response to... Which paragraph is he quoting from the complaint? This is the paragraph 70 from the amended complaint. Where he said it made an audible noise indicating agreement, and then you look at the actual audio and it says, well, something like that. Isn't that an audible noise indicating agreement? What's contradictory with that? And he continues, Your Honor, because Bermia did not think she had any choice but to tell Now, when he made that determination, where did he get that from? Because Bermia did not, isn't that a, I mean, that's him. That's an allegation in the complaint. That is the direct quotation from the complaint. And read it again. And that's in paragraph 70? Yes, Your Honor. Okay. He quotes from paragraph 70, and after he says that noise indicating agreement with Roop, this is in paragraph 70 of the second amended complaint, and I can pull the JA site for the second amended complaint. No, no, no, I got it right here. You go. The paragraph 70 then goes on to say, because he and Judge Urbanski inserted the plaintiff's name, because Bermia did not think that she had any choice but to tell Roop and Adkins what they wanted to hear, Judge Urbanski modified just to include the names of the defendants. So where is the contradiction in the audio? According to Judge Urbanski, his interpretation was that she only agreed with Roop because she was coerced, and he says that is a suggestion which is blatantly contradicted. What is it? Where is the contradiction in the audio? That she made the statement because she didn't think she had any choice, therefore, meaning she was coerced, the inference there is that she was coerced. I'm not following. I'm trying to understand. You've got the complaint saying one thing, and in order to get there, you need something factually from the complaint. I got the conclusion and an interpretation that Judge Urbanski and we all can make, but where is the direct contradiction to that statement in paragraph 70? Here's another way to say it. Did Bermeo in the audio say, I did think that I had a choice about telling Roop and Adkins what to say? No, it doesn't, and that's where I was trying to get earlier. I think that's the issue. That's the facts. The facts are that Bermeo says she didn't think she had a choice, and in the audio, she doesn't say, I did think I have a choice. What the district court did was looked at the audio as a whole and said, I think that statement is not supported given the audio as a whole. Would you agree with how I described it? That factual allegation that's not in the recording is not supported by the recording, correct? That's different than contradictory. There's a lot of things not in that recording, and every time she says something here, the standard is not that it must be supported by the recording of audio. It needs to be contradicted by it, so it's not the absence of her saying something is a fact. She didn't say that on that. Not just contradicted, blatantly contradicted. Correct. Again, I want to go back to my initial suggestion is that if we're talking about if Judge Urbanski was wrong and decided that he felt that the audio recording blatantly contradicted that Bermeo was coerced during this interaction, if that is not a factual contradiction, I think we have an issue with a legal conclusion. Then this whole issue about whether or not Judge Urbanski considered the recording really becomes a non-issue because we moved on the grounds that regardless of the recording, the factual allegations taken as true were not sufficient to establish as a matter of law that Ms. Bermeo was coerced into making this confession. Taken it as true, she said she didn't think she had a choice but to do this. Your point is, well, you didn't say that on audio. That's not the standard. I mean, it cannot be. I mean, otherwise, what is 12b-6? If you can come back to something that's in opposite to, if you don't have something in opposite but something you say in a complaint in the video, then you can come back and say, well, that is not true. You would have said it, something of that nature, but you didn't say that. That doesn't follow. Well, I mean, it really muddles it to me. And, you know, bringing it down, I mean, we get in the whole business of, as I said, bringing in extra evidence during the 12b-6 stage. Typically you don't do that. You stay with the pleadings. There's a limited way in which we bring in videos. It's happening in circuits that have begun to allow them some, not so much so, probably for good reason in cases of this nature. But when you have a case where you've got all these facts, and then you've got this video and everybody says it's authentic, and it is integral, authentic is very important in this day and age with A&I. You've got to make sure that is what it is. And they say that's what it is. And if you said this and the video shows, no, it didn't happen. This didn't happen. There have been cases in which there has been that blatant contradictory. This doesn't seem to fit in those kind of cases where that blatant contradictory fact is illustrated or shown or demonstrated by the audio. And, Judge Wayne, if that is the court's decision, again, this is. . . No, I'm not trying to. . . I'm not deciding. I'm just saying that's the law. That the law is Doty, and Doty sets it out very clearly. It must show blatantly contradictory fact. That's not a decision. We just follow what's there. If I understand what you're saying, you're saying for the sake of argument, assume error because the district court went beyond using the video to deal with blatant contradictions and assessed it with legal conclusions. You're saying even if that was erroneous, you still think the pleadings don't properly allege the claim she asserts. Yes, Your Honor. Now, we don't have that. That's an alternative basis for us to decide this appeal. Is that what you're suggesting? Yes, Your Honor. There are multiple bases. So you're arguing harmless error? Yes. If there was error, it was harmless, and that there are alternative grounds. We usually hear harmless error in criminal cases. Really what it is in the civil context. But you're arguing it in the. . . That's what you're arguing now, today. You're here arguing harmless error. It's a nuance of it in the sense that this court can reverse for grounds that are. . . So you confess error and say it's not presidential. I'm not conceding error, Judge Kagan. Well, you're arguing harmless error. You have to. You can't argue harmless error unless you admit the error. But the appellee is allowed to argue in the alternative, that even if there was error, there are alternative grounds. You're hypothetically confessing the error. Yes, Your Honor. Hypothetically, if there was error, there are alternative grounds to affirm. I thought you said there was error. I did not say that there was error, Judge King. I'm sorry if I'm. . . I thought you said that to both my colleagues. Yeah, I understood you to say. . . I was just sitting here listening, and that's the way I heard it. Why don't you get away from using harmless error? That's not really what you need to do. 12b-6 only requires you to look at the pleadings. It seems like you are saying, well, even if you don't look at the video, even if you don't consider any of the video, you're saying on the complaint's face itself it fails to meet the 12b-6. Is that where we are? I don't know if the word harmless error needs to go there, because then you're going to find yourself where you are. Yes, Your Honor. Judgment, and we did not argue harmless error. Again, we argued that there are alternative grounds for affirmance in this case. Well, that's not an alternative ground. That's the ground. If 12b-6 says look at the pleading, you say forget the video, take all the video stuff out, and on the complaint itself it fails 12b-6. That doesn't sound alternative to me. It sounds like that's 12b-6. You bring in the video because if the video helps you to get there, with Daugherty, you can bring it in if it shows blatant contradictory. But you're saying you don't need it. As I understand it, you don't need to look at the video. Just look at the complaint itself, and so when you get to the complaint itself, your argument flows from there. It's the way I see it, and maybe I'm not seeing here in it, but that's why I say I don't think harmless error needs to be brought up, because that's 12b-6. Correct, Your Honor. I think what we need to talk about is what is the test for coercion. You brought the video into it, didn't you? I'm sorry, Your Honor? You brought the video in. Yes, we submit the— So you're saying now you don't need it. You're repudiating the video. Yes, Your Honor. Is that what you're doing? Yes, Your Honor. You withdraw the video. Yes, Your Honor. I withdraw. I don't want to consider it any further. If you can do that now, but it's in the record. You put it in. Counsel, tell us, do you mind telling us, can we hear your argument about why you think, irrespective of the video, you prevail on the allegations in the complaint? I would love to, Judge Quattlebaum. First and foremost, there is a critical issue in this case where there, I believe, has been waiver by the appellant with respect to the briefing in this case. We raised substantial arguments in our opposition brief that simply were flat out not responded to in a reply brief. This court has found that to be tantamount to waiver. That was in, I believe, it was the Mahdi v. Sterling case, 20 Fedforth, the pen site is 905 at footnote 42. Again, we raised a number of arguments, but one is Judge Quattlebaum brought up during the opening argument. Let me process this because, again, it's the process we're going through. We're on 1286, which is basically you look at the pleadings themselves of Iqbal and Twomley to determine whether or not these allegations of theirs are sufficient. When you get into whether or not you weave an argument to us or not, what's our review? Are we de novo review on the 1286? Yes, Your Honor. So we just look at the complaint, and to Judge Quattlebaum's question, that's where your argument should go. What in that complaint makes it deficient to the point that, as a matter of law, it must be dismissed under 1286? The test for coercion is the totality of the circumstances test. It's not just the subjective belief of the plaintiff, or in this case a criminal suspect or a defendant. It's the totality of the circumstances. And so if we look at the totality of the circumstances, we have on the one hand... Totality of the circumstances as reflected in the complaint. Yes, Your Honor. So the complaint has to fail to state a claim for which relief could be granted. Yes, Your Honor. And so in this case, we have a 21-year-old woman who is a high school graduate. She is a double major at her college. She's attending college as a double major, and there's some sort of, I think, criminal justice major as well as a psychology major. This interaction did not take place inside of a sheriff's office, did not take place in the context of a custodial detention. She was not handcuffed. There was no suggestion that she was not free to leave at any time. It lasted 24 minutes. What was the criminal proceeding related to this? After this interaction, where Ms. Bermeo claimed she was coerced into confessing to making a false report, she was subsequently charged with making a false report to law enforcement. And she was acquitted? After she was convicted by a general district court judge. And she was acquitted? Yes. There was a retrial and she was acquitted?  What's the effect of the acquittal? It's irrelevant for purposes of the coercion analysis. So is your, you cited some facts during the complaint about her adult status, her educational status, the length of time, where they were when this happened. And those, I think, under the complaints are part of the totality. But the subjective viewpoints are part of those totality too. You're not saying that's irrelevant? No, Your Honor. So that's part of the totality. And what's not, and this isn't in the complaint, but what I wonder about, given that we have allegations about the subjective belief, which is relevant, given the fact that you have facts that you think support that there's not coercion, can we say, at this point, that there's absolutely not a legal claim? Even the nature of totality of the circumstances, some people don't like those tests because you never know whether you have it or you won't, or you don't. But can we say, at the 12B-6, that there's just not a claim supported there? It seems like we got facts in there that would point your way, allegations that she would point the other way. How can we do that at 12B-6? You can, Your Honor, because very similar to how this issue would be looked at in a criminal context. For example, in the cases we cited, United States v. Braxton, the Whitfield case, which Judge Wynn was on, I believe, when the Fourth Circuit is reviewing those issues where a district court has made a determination about coercion in the criminal context, it has to take the factual findings of the district court in that it can't question them unless they're clearly erroneous. And so it's very similar to taking the allegations in the complaint as true, as to whether or not, in this context, they state a claim where, as my friend on the other side has said, all of her claims sort of rest on this notion of coercion. And so if there was no coercion, then there would be no basis for any of these claims. And so that's how the court can reach that issue. But we'd be doing something, and am I right on this? We'd be doing something, which is looking at that complaint in its totality and deciding whether it was sufficient. We'd be doing that in the first instance because under this hypothetical that it was wrong to consider the video or audio, the district court didn't do what you're suggesting we can do. You're saying, and I don't think that's an absolute . . . I don't think that means we can't do it, but we'd be the first people to do that analysis. Yes, and this court has done that very thing multiple times in multiple cases where a district court judge . . . I meant in this case. Yes, Judge Quattlebaum, in this case it would be the first time, but this court has, on multiple occasions, affirmed district court rulings for alternative grounds that exist in the record and arguments made by the appellees. Does the issue of qualified immunity come into play? One argument would be that you haven't pled a coerced confession. These are 1983 claims. Would an argument be that even if there's some question about that, there's no clearly established law that would say the right, as it applies in this circumstances, is clearly established? Correct, Judge Quattlebaum, because there hasn't been, at least that I have not been able to find, a case involving an interaction with a person who is not in custody, outside, no question or suggestion that they were not free to leave or that they were physically abused or had lack of mental capacity or ability to understand what was happening. Any suggestion like that, such as these officers, and that's where qualified immunity comes to a head, is there has to be some case that is somewhat similar on the facts to determine whether or not that right was clearly established at the time. And again, this is 2020 when this happened. Did you all brief that below? Yes, briefed that below. And you briefed it to us, but the district court didn't rule on that? The district court did not address it because it reached the, ultimately it ruled as a matter of law that there was no coercion in it, and therefore the claims failed for that reason, as well as some additional reasons that the district court raised that we articulated on brief as well. Okay. I see that I'm out of time. Thank you, Your Honors. We would ask that the decision be affirmed. Thank you very much, sir. We appreciate it. Ms. Hordachuk? I don't have much of a rebuttal to add. If Your Honors have any questions. What do you say about this qualified immunity? I would say, and again, I know I didn't say this was authoritative, but that Third Circuit opinion that I sent in the 28-J letter, Reedy versus Edvinson, they addressed qualified immunity in this context and mentioned that the intention of qualified immunity is to support law enforcement officers in split-second decisions, and it's not supposed to be. We understand some qualified immunity. Were they claiming qualified immunity for the alleged sexual assault or for the coercion on the statement? They're claiming qualified immunity, like saying that they didn't know that coercing, or I don't know if they're saying it's not coercion, but they didn't. My understanding is they're saying that they did not know that their actions in interviewing this victim of sexual assault was unconstitutional. It was qualified immunity with respect to the interview. Is that the claim, as you understand it? Probable cause, I would say, is really where it comes in. But they're talking about qualified immunity for what they did, the police officers. Correct. To follow up on that, we can assess that ourselves. I think we have the authority to do it. We have the authority to send it back and ask the district court to do that in the first instance. Not to say for sure, but it's hard to imagine, quite frankly, us sending it back just based on the order and not know what's happening. The district court's made this pretty clear. But anyway, I guess that's just a decision for us to make. Well, we ask that the court please reverse and remand, vacate and remand. Thank you. Thank you very much. We're going to come down and greet counsel, and then we're going to take a break and have a conference between the judges. And then we're going to come back in and talk to the VMI students for a few minutes, Madam Clerk. So for now, we'll take the break. We'll greet counsel. This honorable court stands adjourned until tomorrow morning. Vacate the United States in this honorable court.
judges: Robert B. King, James Andrew Wynn, A. Marvin Quattlebaum Jr.